## EXECUTIVE DISCRETION IN ENFORCING COMPLIANCE WITH PENAL STATUTES.

Common Pleas Court of Hamilton County.

THE CLIFTON SPRINGS DISTILLING COMPANY v. MARK A. BROWN, STEWART J. HAGEN, JOHN SEIDINSPINNER AND JOHN BRANDT.

Decided, January, 1909.

*Injunction—Property Rights—Executive Interference with, Where Protecting the Public from Violations of Penal Statutes—Feeding of Wet Distillery Waste to Milch Cows—99 O. L., 239.*

Where the only interference with property rights, which can result from a threatened prosecution by the health officer and milk inspectors, is the right to market milk from cows to which distillery waste sold by the plaintiffs has been fed, the interference does not go beyond a reasonable exercise of executive discretion, and injunction against such interference will not lie, but the plaintiffs will be left to set up in a criminal action the question of the constitutionality of the act under which the health department is proceeding, or the correctness of the construction which is being placed upon the act by that department.

*Lawrence Maxwell,* Jr., for plaintiff.
*Albert H. Morrill,* contra.

HUNT, J.

The plaintiff, in its petition, alleges that it is operating a large distillery; that one of its products, after the separation of distilled spirits, is grain juice of which it has a daily output of about 2,500 barrels; that such product is a nutritious and healthful food for cattle, free from any injurious ingredients; that it is impractical to store such products, and that it has a large and profitable trade in the sale of this product to customers who haul it away in wagons.

Plaintiff further alleges that the defendants, the health officer of Cincinnati, and milk inspectors in his employ, have entered into a conspiracy to injure and destroy plaintiff's trade in

grain juice, and in pursuance thereof are soliciting plaintiff's customers not to buy such juice, telling them that it is unlawful to use it, threatening them with criminal prosecution if they buy or use it; that defendants station themselves in the public highway near plaintiff's distillery, and as health officers of the city of Cincinnati stop intending purchasers of said juice, and by means of threats cause customers of plaintiff not to buy. Plaintiff says that unless defendants are enjoined from said acts its said business will be destroyed; that defendants are financially irresponsible, and that it will suffer irreparable injury for which it has no adequate remedy at law.

After the filing of this petition a temporary restraining order was issued, restraining the defendants "from soliciting the plaintiff's customers or others not to buy grain juice from it, and from threatening them with arrest or prosecution or other injury if they do so, and from picketing plaintiff's premises, and from interfering in any manner with plaintiff's said business, and from causing any of said acts to be done."

No answer has been filed by the defendants, nor has the time for answer arrived.

The defendants promptly filed a motion to dissolve the restraining order.

Upon the hearing of this motion, the evidence does not establish all the facts alleged in plaintiff's petition, but does establish that plaintiff's product, which it calls grain juice and which is technically known as distiller's spent beer, is what is commonly known as slop or wet distillery waste, from which most of the solid matter has been filtered; that it contains about three per cent. of nutritious, healthful and non-injurious substances mostly in solution, and about ninety-seven per cent. of sterilized water, and that when mixed with the proper amount of chopped hay or other similar roughage, the mixture, if fed under proper conditions and in proper amounts, is in quantity and quality a practical, scientific and proper food for milch cows. The evidence further shows that the defendants, the milk inspectors, by order of the defendant health officer, stationed themselves in the highway near plaintiff's distillery, stopped persons going

to plaintiff's distillery with wagons suitable for carrying plaintiff's product, took their names and addresses, if unknown, and told them, in substance, that it was unlawful to sell or offer for sale any milk from cows to which plaintiff's product was fed, and that any person selling or offering to sell such milk would be fined. The evidence further shows that the manifest object of this was in part to collect evidence by getting the names and addresses of dairymen buying plaintiff's product in order to prosecute those selling such milk, and in furtherance of a plan to stop entirely the feeding of wet distillery waste or slop to cows whose milk was contemplated to be sold or offered for sale. There is no evidence that the health officer was not in good faith endeavoring to enforce, and prevent the violation of, what he in good faith believed to be the law, to-wit: that milk from cows to which *any* wet distillery waste or slop whatever was fed, could not lawfully be sold or offered for sale.

The act of April 30, 1908 (99 v. 239), makes it unlawful "to sell, exchange or deliver with intention to sell or expose for sale or exchange, milk from cows fed on wet distillery waste or starch waste."

Plaintiff claims that such act is applicable only to milk from cows fed on waste exclusively, or substantially so, and not to milk from cows fed on such waste in proper proportion with hay or other similar roughage; that the words, "fed on" imply and mean an exclusive diet, or at least a regular and substantial part of diet.

The evidence does not show that any one was deterred from buying plaintiff's product, except dairymen who were buying it for the purpose of feeding it, to some extent at least, to their cows whose milk was put on the market; or that the actions of the health officer and his employes were in any degree whatever, for the purpose of causing any loss of business to plaintiff, or that there has been or will be any loss of business to plaintiff in the sale of its product, except such as is or will be the inevitable results of the discontinuance by dairymen of the feeding to any extent whatever, of plaintiff's product to cows whose milk is sold or offered for sale. There is no evidence that plaintiff's

customers are being deprived of a full opportunity to test the act, as construed by the health officer, by any failure on his part to prosecute the violators of the law as he construes the law to be; or that plaintiff or any of its employes is, by said construction, liable to civil or criminal prosecution, or in danger of being made a party in any multiplicity of suits civil or criminal by reason of what the health officer may do under his construction of the act.

The only right pertaining to property which may be affected by the contemplated prosecutions is the right to market milk from cows to which plaintiff's product may be fed. Plaintiff sells its product, but does not claim any property right in any such milk.

It is the duty and right of the health officer under the direction of the board of health to enforce, and endeavor to prevent the violation of, all laws which pertain to the milk supply of the city as he in good faith, after consulting his proper legal advisor, believes the law to be. In so doing, it is his duty in a lawful manner to collect evidence of violations or probable violations of the law, and he may, for the purpose of preventing violations thereof, notify individuals and the public of what he in good faith believes the law to be, and for the purpose of preventing the violations of such law may give warning to probable violators thereof of his intended prosecutions under the law, provided the methods used are in the reasonable exercise of the executive discretion conferred on him by the law. When so acting, the question whether he is correct in his construction of the law, so long as the enforcement of his construction is contemplated or threatened by criminal prosecution only, can ordinarily be determined only in such criminal prosecution as may be instituted for its enforcement.

A court of equity will not interfere with an executive officer charged with the duty of protecting the public from violations of penal statutes and prosecuting the violators thereof, so long as such officer acts reasonably and in good faith within the executive discretion conferred on him by his office. Neither will a court of equity interfere in criminal prosecutions pend-

ing or contemplated unless, with other necessary conditions, violations of property rights are clearly threatened. Such rights must necessarily be those of the party invoking the action of the court.

The evidence offered upon the hearing of this motion does not establish that the health officer or his milk inspector went beyond the reasonable exercise of the executive discretion conferred on them by virtue of their office, and does not establish that any property rights of plaintiff will be affected by any prosecutions which may be instituted by the health officer under the law as he construes it, even if erroneously so construed.

The temporary restraining order heretofore granted should therefore be dissolved.

. The question as to the construction and constitutional effect of the words "fed on" in the act of April 30, 1908, commonly known as. the slop feed act, is neither necessary nor proper to be determined in this case.

## SALES OF LIQUOR ON THE OHIO RIVER TO RESIDENTS OF A DRY COUNTY.

Common Pleas Court of Adams County.

THE STATE OF OHIO V. FRANK KENDLE.

Decided, January, 1909.

*Liquor Laws—Jurisdiction of Offenses Against, Committed on the Ohio River—Effect of a Government License—Meaning of the Phrase "Within the Limits of" as Applied to Criminal Procedure—99 O. L., 35.*

1. The courts of Ohio have jurisdiction of crimes and offenses committed on the Ohio river opposite its shores, and this is so although the statute defining the offense makes it unlawful to do the act "within the limits" of any county where prohibited.